## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NATALI RUTIAGA, | ) |
| | ) |
| Plaintiff, | ) Case No. 20-cv-06015 |
| | ) |
| vs. | ) |
| | ) |
| STATE COLLECTION SERVICE, INC, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Natali Rutiaga, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendants transact substantial business here.

## STANDING

3. Plaintiff has suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

4. Specifically, Plaintiff suffered a concrete informational injury as a result of Defendant's failure to provide complete and truthful information in connection with its attempt to collect an alleged debt from Plaintiff. *Bellwood v. Dwivedi*, 895 F.2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from

misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]")

**PARTIES**

5. Plaintiff, Natall Rutiaga, ("Plaintiff"), is a resident of the state of Illinois from whom Defendant attempted to collect a delinquent consumer debt allegedly owed for a defaulted medical account. Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

6. Defendant State Collection Service, Inc. ("SCS") is a Wisconsin corporation that does or transacts business in Illinois. Its registered agent and office is C T Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, Illinois 60604.

7. SCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. SCS holds a collection agency license from the State of Illinois and is a Licensed Collection Agency, as that term is defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq., and attempts to collect debts originally owed to others.

9. SCS is a "debt collector" as defined in in 15 U.S.C. § 1692a(6) of the FDCPA.

**FACTUAL ALLEGATIONS**

10. Plaintiff incurred a debt allegedly owed for medical services provided by The University of Chicago Medical Center ("alleged debt"). The alleged debt is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

11. Plaintiff sought medical services from the University of Chicago Medical Center ("U of C") in September 2019.

12. Plaintiff had medical insurance to cover the alleged debt.

13. Plaintiff was billed for the services in full.

14. Plaintiff contacted U of C and explained that she was insured and had provided her insurance information at the time of service, and was then informed that the bills would be submitted to her insurance, for whom U of C is an in-network provider.

15. Instead, SCS began collecting the alleged debt from Plaintiff.

16. On or about March 13, 2020, SCS called Plaintiff regarding the alleged debt.

17. Plaintiff was connected to an agent of SCS.

18. The SCS agent communicated information regarding the alleged debt to Plaintiff, including the identity of the creditor and the amount of the debt.

19. Thus the call was a "communication" as that term is defined at §1692(a) of the FDCPA.

20. SCS directed and ratified the actions of its agent.

21. SCS informed Plaintiff that the medical debt was immediately due and owing.

22. Plaintiff recounted her conversation with the original creditor, U of C, and explained that the bill should be covered by her insurance.

23. SCS threatened Plaintiff that if she did not pay the debt on that call, it would appear on her credit report as a delinquent account and damage her credit score.

24. Plaintiff paid the debt in full to avoid damage to her credit, despite not being responsible for the debt.

25. SCS's threat that the debts would appear on Plaintiff's credit report was a false threat.

26. In truth and in fact, a medical debt may not appear on any credit report until the bill is 180 days *past default*:

> To allow appropriate time for insurance remediation and clarity on what a consumer's individual payment obligation is for a medical account, the CRAs shall prevent the reporting and display of medical debt identified and furnished by Collection Furnishers when the date of the first delinquency is less than one hundred and eighty (180) days prior to the date that the account is reported to the CRAs.

Assurance of Voluntary Compliance, *In the Matter of the Investigation by Eric T. Schneiderman, Attorney General of the State of New York* (New York, 2015)

27. The Assurance of Voluntary Compliance was entered into by the credit bureaus and the attorneys general of 31 states including Illinois.

28. Plaintiff did not become delinquent on the account until after she was billed for services and after the due date on the first bill passed.

29. As the date of service itself was less than 180 days prior to the call, and considering the amount of time necessary to generate and send a bill for services, and for that bill to become delinquent, the date where any delinquency could appear on Plaintiff's credit report was nowhere near.

30. The grace period is designed to handle situations like Plaintiff's.

31. Plaintiff explained that the claim had already been submitted to her insurance company and would be paid shortly, according to U of C.

32. SCS told her it did not matter, that if she did not pay the debt to them, it would appear on her credit.

33. SCS's threat was false.

34. SCS's threat was intended to make Plaintiff afraid of negative effects on her credit report and rating.

35. SCS made this false threat in an attempt to coerce Plaintiff into paying the balance in full on the alleged debt.

36. Plaintiff paid the alleged debt on the call to stop the medical debt from appearing on her credit report.

37. It is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass. *Lox v. CDA, Ltd*., 689 F.3d 818, 825 (7th Cir.2012).

38. 15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . .**
>
> **. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

39. SCS threatened an action that could not legally be taken, in violation of 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10), when it stated that Plaintiff's medical debt would appear on her credit if she did not pay SCS.

40. 15 U.S.C. § 1692f of the FDCPA provides as follows:

> **Unfair practices**
>
> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .**

41. SCS used unfair or unconscionable means to collect a debt, in violation of 15 U.S.C. § 1692f, when it told Plaintiff if she did not pay a medical debt over the phone it would appear on her credit.

42. SCS attempted to collect an amount not permitted by law, in violation of 15 U.S.C. § 1692f(1), when it collected a debt from Plaintiff that in fact owed by a third-party insurance company.

43. SCS' communication caused Plaintiff to experience negative emotions, including annoyance, aggravation, and other garden variety emotional distress; so much so that she paid a debt she did not owe.

44. Plaintiff was further damaged by SCS' conduct when she paid a medical debt out of pocket that would have otherwise been covered by her medical insurance.

45. Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. *See*, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

**COUNT I- FAIR DEBT COLLECTION PRACTICES ACT**

46. SCS threatened an action that could not legally be taken, in violation of 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10), when it stated that Plaintiff's medical debt would appear on her credit if she did not pay SCS.

47. SCS used unfair or unconscionable means to collect a debt, in violation of 15 U.S.C. § 1692f, when it told Plaintiff if she did not pay a medical debt over the phone it would appear on her credit.

48. SCS attempted to collect an amount not permitted by law, in violation of 15 U.S.C. § 1692f(1), when it collected a debt from Plaintiff that in fact owed by a third-party insurance company.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

      A.      Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

      B.      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

      C.      Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

      D.      Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

By: s/Michael J. Wood
One of Plaintiff's Attorneys

Michael Wood
Celetha Chatman
**Community Lawyers, LLC.**
20 N. Clark Street, Suite 3100
Chicago, IL 60602
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com

## **DOCUMENT PRESERVATION DEMAND—CALL RECORDINGS**

Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

By: */s/ Michael J. Wood*
Attorney for Plaintiff